IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| GINA MARIE BISCEGLIA, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 3:15cv83 (JRS) |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| Defendant. ) | |
| _____ ) | |

## REPORT AND RECOMMENDATION

On December 5, 2011, Gina Marie Bisceglia ("Plaintiff") applied for Social Security Disability Benefits ("DIB") and, on December 29, 2011, for Supplemental Security Income ("SSI") under the Social Security Act ("Act"), alleging disability from fractured ribs, cataracts, pancreatitis, knee problems, hepatitis C, cirrhosis of the liver, feet problems, enlarged liver/spleen, breast cancer and anemia, with an alleged onset date of March 15, 2010. The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration. Thereafter, an Administrative Law Judge ("ALJ") denied Plaintiff's claims in a written decision and the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), arguing that the ALJ erred, because the ALJ's residual functional capacity ("RFC") findings contradict the SSA's policies and regulations, or in the alternative, because he violated the SSA's Program Operations Manual System ("POMS") DI 25025.015(D). (Pl.'s Br. in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mem.") (ECF No. 13) at 2-7.) This matter now comes before the

Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the parties' cross-motions for summary judgment, rendering the matter now ripe for review.[1] For the reasons that follow, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 12) be GRANTED, that Defendant's Motion for Summary Judgment (ECF No. 14) be DENIED and that the final decision of the Commissioner be VACATED and REMANDED.

## I. PROCEDURAL HISTORY

On December 5, 2011, Plaintiff filed an application for DIB, and on December 29, 2011, Plaintiff filed an application for SSI, with an alleged onset date of March 15, 2010. (R. at 218, 236.) The SSA denied these claims initially on March 12, 2012, and upon reconsideration on October 10, 2012. (R. at 142, 153.) At Plaintiff's written request, the ALJ held a hearing on April 3, 2014. (R. at 57, 156.) On June 27, 2014, the ALJ issued a written opinion, denying Plaintiff's claims and concluding that Plaintiff did not qualify as disabled under the Act, because jobs existed in significant numbers in the national economy that Plaintiff could perform. (R. at 22-35.) On December 15, 2014, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner subject to review by this Court. (R. at 1.) On February 11, 2015, Plaintiff sought judicial review of the Commissioner's decision. At Plaintiff's request, this Court heard oral argument on December 7, 2015. (Tr. of Dec. 7, 2015, Hr'g. ("Tr.") at 1, 4.)

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court "will affirm the

---

[1] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

Social Security Administration's disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). To determine whether substantial evidence exists, the Court must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). In considering the decision of the Commissioner based on the record as a whole, the Court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 477. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The SSA regulations set forth a five-step process that the agency employs to determine whether a disability exists. 20 C.F.R. § 416.920(a)(4); *see Mascio*, 780 F.3d at 634-35 (summarizing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration

3

requirements. 20 C.F.R. § 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. 20 C.F.R. § 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity ("RFC"), accounting for the most that the claimant can do despite her physical and mental limitations. 20 C.F.R. § 416.945(a). At step four, the ALJ assesses whether the claimant can perform her past work given her RFC. 20 C.F.R. § 416.920(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. 20 C.F.R. § 416.920(a)(4)(v).

### III. THE ALJ'S DECISION

On April 3, 2014, the ALJ held a hearing during which Plaintiff (represented by counsel) and a vocational expert ("VE") testified. (R. at 22.) On June 27, 2014, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act. (R. at 35.)

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. 23-24). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity ("SGA") since March 15, 2010. (R. at 24.) At step two, the ALJ determined that Plaintiff had severe impairments of degenerative disc disease of the lumbar spine, chronic liver disease, hepatitis C, chronic anemia, posterior tibialis tendonitis of the left lower extremity and bilateral pes planus. (R. at 24.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 27.)

In assessing Plaintiff's RFC, the ALJ found that Plaintiff had the RFC to perform less than the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). (R. at

29.) Plaintiff could frequently lift and carry ten pounds and occasionally lift and carry twenty pounds. (R. at 29.) She could sit for seven hours in an eight-hour work day. (R. at 29.) She could stand or walk for two hours in an eight-hour day. (R. at 29.) She could constantly push or pull at the light exertional level. (R. at 29.) She could occasionally climb stairs or ramps. (R. at 29.) She could occasionally climb ladders, ropes or scaffolds. (R. at 29.) She could frequently balance, stoop, kneel, crouch or crawl. (R. at 29.)

At step four, the ALJ found that Plaintiff could not perform any past relevant work. (R. at 34.) At step five, the ALJ determined that Plaintiff could perform other jobs existing in significant numbers in the national economy. (R. at 34-35.) Therefore, the ALJ found that Plaintiff did not qualify as disabled under the Act. (R. at 35.)

## IV. ANALYSIS

Plaintiff, fifty-two years old at the time of this Report and Recommendation, previously worked as a server and a store laborer. (R. at 82.) She applied for DIB and SSI, alleging disability from fractured ribs, cataracts, pancreatitis, knee problems, hepatitis C, cirrhosis of the liver, feet problems, enlarged liver/spleen, breast cancer and anemia, with an alleged onset date of March 15, 2010. (R. at 222, 248.) Plaintiff argues that the ALJ erred, because his RFC findings contradict the SSA's policies and regulations. (Pl.'s Mem. at 2-7; Tr. at 20-28.) Alternatively, Plaintiff argues that the ALJ erred by violating the SSA's Program Operations Manual System ("POMS") DI 25025.015(D). (Pl.'s Mem. at 6-7; Pl's Reply Br. ("Pl.'s Reply") (ECF No. 16) at 1-4; Tr. at 20-28.) For the reasons set forth below, the Court finds that the ALJ erred in his decision.

### A. The ALJ erred in his explanation of the RFC findings.

Plaintiff argues that the ALJ erred by concluding that Plaintiff could perform any light work, because the ALJ's own assessment of Plaintiff's RFC limits Plaintiff to sedentary work. (Pl.'s Mem. at 4.) Specifically, Plaintiff points to the ALJ's adoption of the opinions of state agency medical consultants who, according to the ALJ's opinion, "indicated that the claimant is capable of a range of work at the light exertional level that includes postural limitations . . . ." (R. at 33.) However, contrary to the ALJ's opinion, the state agency medical consultants, Drs. Amos and Darden, both repeatedly opined that Plaintiff had the maximum sustained work capacity for sedentary work. (R. at 100, 110, 124, 138.) Yet, the ALJ stated that he gave "significant weight" to these opinions — the only medical opinion[2] evidence in the record for Plaintiff's physical capacity to work — in reaching a conclusion that Plaintiff could perform "a range of work at the light exertional level." (R. at 33.)

Defendant responds that the ALJ properly held Plaintiff to a limited range of light work. (Mem. in Supp. of Def.'s Mot. for Summ. J. and in Opp. to Pl.'s Mot. for Summ. J. ("Def.'s Mem.") (ECF No. 14) at 11-16.) Defendant argues that the ALJ did not err, because the ALJ adopted "essentially the meat of [the state agency medical consultants'] findings." (Tr. at 17.) In other words, according to Defendant, no error occurred, because the ALJ adopted the underlying limitations found by the state agency medical consultants, ultimately concluding that Plaintiff could perform less than a full range of light work. (Tr. at 9.) Alternatively, Defendant

---

[2] The SSA regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a), 416.927(a).

6

contends that any error committed by the ALJ was harmless. (Def.'s Mem. at 15 n.3.) The Court disagrees.

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.902(e)-(f), 416.945(a)(1). The claimant's RFC must incorporate impairments supported by the objective medical evidence in the record, as well as those impairments based on the claimant's credible complaints. *Carter v. Astrue*, 2011 WL 2688975, at \*3 (E.D. Va. June 23, 2011); *accord* 20 C.F.R. § 416.945(e). The ALJ "must first identify the [claimant]'s functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." *Mascio*, 780 F.3d at 636 (citing SSR 96-8p). The ALJ's RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." *Id.* (citing SSR 96-8p).

The Court will uphold the ALJ's RFC findings if substantial evidence in the record supports the findings and the ALJ has applied the correct legal standards in reaching them. *Hancock*, 667 F.3d at 472. "A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). The Court will "remand to the agency for additional investigation or explanation when we cannot evaluate the record of the basis that underlies the ALJ's ruling." *Fox v. Colvin*, 2015 WL 9204287, at \*3 (4th Cir. Dec. 17, 2015) (quoting *Radford*, 734 F.3d at 295).

### 1. The ALJ failed to reconcile the discrepancy between his RFC findings and the opinions of the state agency medical consultants.

Here, the ALJ found that Plaintiff had the RFC to perform "less than the full range of light work," with additional limitations. (R. at 29.) The ALJ cited the opinions of the state agency medical consultants in support of his findings and stated:

> Regarding the opinion evidence the undersigned acknowledges that State agency medical consultants completed physical residual functional capacity assessments indicating that the claimant is capable of *a range of work at the light exertional level that includes postural limitations*. The undersigned gives *significant weight to these opinions* because they are consistent with the claimant's medical records on a longitudinal basis . . . .

(R. at 33) (emphasis added.)

As previously noted, the state agency medical consultants did not find that Plaintiff could perform "a range of work at the light exertional level that includes postural limitations," as stated by the ALJ. Dr. William Amos, a state agency medical consultant, opined at the initial level of the SSA review that Plaintiff demonstrated "the maximum sustained work capability" for "sedentary" work, based on the seven strength factors for the physical RFC (lifting/carrying, standing, walking, sitting, pushing and pulling). (R. at 100, 110.) Likewise, Dr. James Darden, another state agency medical consultant, opined at the reconsideration level that Plaintiff's maximum sustained work capability was sedentary. (R. at 124, 138.) These opinions — opinions that the ALJ gave "significant weight" — constitute the only medical opinion evidence in the record that speak to Plaintiff's physical capacity to work. The significance of the ALJ's error manifests in the application of the SSA's Medical-Vocational Guidelines (the "Grid") rules.

The Commissioner, through the ALJ, may meet her burden of proving that significant numbers of jobs exist in the national economy through proper reference to the Grid rules. *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Heckler v. Campbell*, 461 U.S. 458,

461 (1983)). The Grid rules provide numbered tables for the sedentary, light and medium levels (Tables 1, 2, and 3, respectively), and separate rules for the heavy and very heavy levels. 20 C.F.R. Pt. 404, Subpt. P, App. 2. If the claimant has sedentary, light or medium exertional capacity, the ALJ must first determine which Grid table to use. 20 C.F.R. Pt. 404, Subpt. P, App. 2. Next, based on the claimant's age, education and previous work experience, rules within the Grid table direct a finding of "disabled" or "not disabled." *Id.* The ALJ must consider the claimant's RFC, age, education and work experience in conjunction with the Grid rules. 20 C.F.R. Pt. 404, Subpt. P, App. 2. Based on Plaintiff's education and previous work experience,[3] the Grid rules for light and sedentary capacity direct the ALJ to reach opposite conclusions with regard to her disability as of her 50th birthday.

Here, the ALJ found that Plaintiff had at least a high school education and performed past relevant work at unskilled and semi-skilled levels. (R. at 34.) For a claimant with the maximum sustained work capability of light work, the Grid rules direct a finding of "not disabled" when the claimant's age falls between the ages of 50 and 54, and she has at least a high school education, regardless of the possibility of direct entry into skilled work and the transferability of her previous job skills. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rules 202.13-15. In contrast, for a claimant with the maximum sustained work capability of sedentary work, the Grid rules direct a finding of "disabled" when her age falls between the ages of 50 and 54, and she has at least a

---

[3] In each Grid table, there are four age groups — "advanced age (55 and over)," "closely approaching advanced age (50 to 54)," "younger individual age 45-49," and "younger individual age 18-44." 20 C.F.R. § Pt. 404, Subpt. P, App. 2. Three education level categories exist: "illiterate or unable to communicate in English," "limited or less," or "high school graduate or more." *Id.* Among the claimants who fall in the "high school graduate or more" category, the Grid rules distinguish those whose education provides for direct entry into skilled work. *Id.* Lastly, there are two categories for previous work experience — "unskilled or none" and "skilled or semiskilled." *Id.* But again, among the claimants with "skilled or semiskilled" past work experience, the Grid rules distinguish those who have transferrable jobs skill from those who do not. *Id.*

high school education, provided that her education does not provide for direct entry to skilled work and she has no transferrable job skills. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rules 201.12, 201.14. Thus, the difference between Plaintiff's ability to perform light work versus sedentary work leads to opposite conclusions as to whether Plaintiff must be found disabled under the Grid rules. And, this flaw in the ALJ's decision becomes even more troublesome, because the ALJ stated that he gave "significant weight" to the state agency medical consultants' opinions in determining Plaintiff's RFC. (R. at 33.)

Defendant responds that the ALJ might have found that Plaintiff had the RFC to perform less than a full range of light work, because her actual limitations enable her to perform some light work. (Def.'s Mem. at 19-21.) That may well be ultimately true; however, based on the record as it currently exists, Defendant's argument at this point consists of mere speculation and an invitation to this Court to engage in conjecture, which the Fourth Circuit has repeatedly criticized. *See Fox v. Colvin*, 2015 WL 9204287, at *4-5 (4th Cir. Dec. 17, 2015) (unpublished) ("it is not our role to speculate as to how the ALJ applied the law to its findings or to hypothesize the ALJ's justifications that would perhaps find support in the record."); *Pearson v. Colvin*, __ F.3d __, 2015 WL 9204335, at *6 (4th Cir. Dec. 17, 2015) ("Although we could guess what these occupations require in reality, it is the purview of the ALJ to elicit an explanation from the expert . . ."). Instead, the duty rests with the ALJ, not a reviewing court, to find facts and resolve conflicts. *Radford*, 734 F.3d at 296; *see also Brown v. Colvin*, 2016 WL 50298, at *2 (4th Cir. Feb. 9, 2016) ("We remand to avoid engaging in fact-finding 'in the first instance' and to allow the ALJ to further develop the record so that we can conduct a meaningful judicial review"). And, as the Fourth Circuit has repeatedly made clear, the ALJ must provide a sufficient explanation of his findings to allow for meaningful appellate review. *See Mascio*, 780 F.3d at

637 ("Because we are left to guess about how the ALJ arrived at his conclusion on [Plaintiff's] ability to perform relevant functions and indeed, remain uncertain as to what the ALJ intended, remand is necessary."); *Radford*, 734 F.3d at 295 ("A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence."); *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986) (holding that without an adequate explanation, "it is simply impossible to tell whether there was substantial evidence to support the determination"). In failing to do so here, the ALJ committed reversible error.

Buried in a footnote, Defendant contends that any error by the ALJ was harmless, asserting that:

> The ALJ appropriately assigned significant weight to the specific limitations found by the state agency medical consultants because those limitations enjoyed substantial evidentiary support in the record. Because the record strongly supported the ALJ's RFC assessment for 'less than the full range of light work,' remand for a new explanation of the ALJ's mischaracterization of the state agency doctors' incorrect description of the RFC assessments as sedentary, rather than light, is unnecessary.

(Def.'s Mem. at 15 n.3.) The Court cannot agree.

The burden establishing that the error was harmful rests on "the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). As the Court in *Sanders* elaborated:

> To say the that the claimant has the "burden" of showing that an error was harmful is not to impose a complex system of "burden shifting" rules or a particularly onerous requirement . . . Often the circumstances of the case will make clear to the appellate judge that the ruling, if erroneous, was harmful and nothing further need be said. But, if not, then the party seeking reversal normally must explain why the erroneous ruling caused harm.

*Id.* at 410. Thus, when reviewing a decision for harmless error, a court, among other things, must look at:

> An estimation of the likelihood that the result would have been different, an awareness of what body . . . has the authority to reach the result, a consideration of the error's likely effects on the perceived fairness, integrity, or public reputation of judicial proceedings, and a hesitancy to generalize too broadly about particular kinds of errors when the specific factual circumstances in which the error arises may well make all the difference.

*Id.* at 411-12. And "where the circumstances of the case show a likelihood of prejudice, remand is appropriate so that the agency can decide whether consideration is necessary." *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2010).

Against this standard, the ALJ's error cannot be deemed harmless. As previously discussed, the error by the ALJ is outcome dispositive, particularly since the ALJ stated that he gave "significant weight" to the opinions that he wrongly described. (R. at 33.) And the ALJ's failure to provide any meaningful explanation for his findings pertaining to the state agency opinions further exacerbated the error. Consequently, the ALJ's error mandates remand.

### 2. The ALJ also failed to sufficiently explain the basis of his decision to apply the Medical-Vocational Guidelines' rules for light work.

Plaintiff also argues that the ALJ erred by failing to properly apply the SSA's Grid rules to assess Plaintiff's alleged disability. (Pl.'s Mem. at 2-4.) Defendant responds that the ALJ properly applied the Grid rules for light work, because the walking/standing limitation would not completely preclude Plaintiff from performing a range of light work. (Def.'s Mem. at 20-21; Tr. at 14.)

If the claimant suffers from impairments that only impose exertional limitations,[4] the ALJ may rely exclusively on the Grid rules to assess the claimant's disability. 20 C.F.R. § 404.1569a(b). If the claimant suffers from any nonexertional limitation,[5] the ALJ must first examine the effect of Plaintiff's strength limitations on her ability to work. 20 C.F.R. § 404.1569a(c)-(d). If a Grid rule would direct the ALJ to find the claimant disabled based on her exertional limitations alone, the ALJ may end his analysis after directly applying the rule. 20 C.F.R. § 404.1569a(d). But if the claimant's exertional limitations lead to a finding of not disabled, the Grid rules "reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further diminished . . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 2. In such a case, the Commissioner must prove through a vocational expert ("VE") testimony that jobs exist in the national economy that the claimant can perform. *Aistrop*, 36 F. App'x 145, 147 (4th Cir. 2002) (citations omitted).

Here, the ALJ did not find Plaintiff disabled on exertional limitations alone. (R. at 29.) Instead, the ALJ found that Plaintiff had the RFC to perform "less than the full range of light work," with additional limitations, including the ability to stand or walk up to two hours in an eight-hour workday. (R. at 29.) This two-hour standing/walking limitation placed Plaintiff between the light and sedentary classifications, because she could not perform "either the prolong sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking

---

[4] An exertional limitation affects only the claimant's ability to meet the strength demands of jobs — sitting, standing, walking, lifting, carrying, pushing and pulling. 20 C.F.R. § 404.1569a(b).

[5] A nonexertional limitation affects the claimant's ability to meet the demands of jobs other than the strength demands. 20 C.F.R. § 404.1569a(c).

contemplated for most light work." *Golini v. Astrue*, 483 F. App'x 806, 808 (4th Cir. 2012). If the two-hour walking/standing limitation would preclude Plaintiff from performing any light work, then the Grid rules for sedentary work would direct the ALJ to find her disabled at her 50th birthday, and the ALJ's inquiry would end there. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 (The Grid table for sedentary work directs a finding of disabled for an individual approaching advanced age (ages 50 to 54) when her high school education does not provide for direct entry into skilled work.) However, if the two-hour walking/standing limitation does not preclude her from performing some light work, the Grid rules for light work direct the ALJ to find her not disabled. *See id.* (The Grid table for light work directs a finding of not disabled for any individual approaching advanced age with a high school education or more.) Then the ALJ would have to consult the VE to determine Plaintiff's remaining occupational base, using the Grid rules as a framework.

Plaintiff argues that the ALJ erred by applying the rules for light work, because the two-hour standing/walking limitation precludes her from performing any light work. (Pl.'s Mem. at 4.) Under the SSA's regulations, light work requires "frequent lifting and carrying" and that means "being on one's feet for up to two-thirds of the workday" — much longer than two hours. (Pl.'s Mem. at 3 (citing 20 C.F.R. §§ 404.1567(b); 416.967(b); SSR 83-10.)) Defendant responds that the two-hour standing/walking limitation does not preclude her from performing some light work, and that the ALJ properly determined Plaintiff's RFC using the light work Grid rules as a framework. (Def.'s Mem. at 12-17, 21.) The question then becomes the extent that the two-hour standing/walking limitation affects Plaintiff's exertional capacity, mandating the use of one Grid table over the other.

Social Security Ruling 83-12 provides instructions for choosing proper Grid rules when the claimant's exertional level falls between two classifications. SSR 83-12. If the claimant's exertional level falls between two rules that direct opposite conclusions (not disabled at the higher exertional level and disabled at the lower exertional level), then Social Security Ruling 83-12(2) directs the ALJ to find the claimant not disabled if she has an only slightly reduced exertional capacity for the higher level of exertion. SSR 83-12(2)(a). The Ruling directs the ALJ to find the claimant disabled if she has a significantly reduced exertional capacity for the higher level of exertion. SSR 83-12(2)(b). Further, SSR 83-12 directs the ALJ to consult the VE when "the individual's exertional limitations are somewhere in the middle." SSR 83-12(2)(c) (internal quotation marks omitted).

In this case, the ALJ found that Grid Rules 202.21 and 202.14 would direct a finding of "not disabled" if Plaintiff had the RFC to perform the full range of light work. (R. at 34.) The ALJ consulted the VE "to determine the extent to which these limitations erode the unskilled light occupational base," because her "ability to perform all or substantially all of the requirements of [light] work has been impeded by additional limitations." (R. at 35.) However, the ALJ did not mention the Grid rules for sedentary work at all. And, importantly, the ALJ did not explain why he chose to use the Grid rules for light work over the rules for sedentary work. (R. at 34-35.)

Defendant asserts that the ALJ did not have to state why he picked light work Grid rules over sedentary work Grid rules. (Tr. at 15.) According to Defendant, the ALJ simply had to explain why he chose less than the full range of light work, and that his decision as a whole supports his RFC findings. (Tr. at 13, 15, 19.) Defendant maintains that the ALJ sufficiently

discussed Plaintiff's medical record, the VE testimony, the state agency medical consultants' opinions and his RFC findings. (Tr. at 19.)

However, the Court cannot ignore the obvious conflict between the ALJ's finding that Plaintiff's limitation impeded her ability to perform "*all or substantially all* of the requirements" of light work, (R. at 35) (emphasis added), and the ALJ's decision not to use the Grid rules for sedentary work. If Plaintiff had significantly reduced exertional capacity for light work, Social Security Ruling 83-12 would direct the ALJ to use the Grid rules for sedentary work and find her disabled. Based on the ALJ's RFC findings, he must have found that Plaintiff did not have significantly reduced exertional capacity for light work, even though her limitations impeded her ability to perform all, or substantially all, of the requirements of light work. Contrary to Defendant's argument, the ALJ's discussions of Plaintiff's medical records, the VE testimony, the agency medical consultants' opinions and his RFC findings do not mend this gap in the ALJ's decision. "A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," *Radford*, 734 F.3d at 295, and the ALJ here has failed to provide the Court with this necessary predicate. Accordingly, for this reason as well, the Court recommends remand.[6]

**B. The ALJ erred in relying on the VE's testimony.**

Plaintiff argues that the ALJ erred by relying on the VE testimony to find that Plaintiff could perform jobs existing in significant numbers in the national economy. (Pl.'s Mem. at 3-4.) Specifically, Plaintiff argues that the ALJ should not have relied on the VE testimony, because

---

[6] Plaintiff also argues alternatively that the ALJ violated the SSA's POMS DI 25025.015(D), by failing to provide an explanation for his application of the Grid rules. (Pl.'s Mem. at 5-7.) However, having already found grounds for remand, the Court need not address this alternative argument raised by Plaintiff.

the evidence presented by the VE was inconsistent with the regulatory definition of light work. (Pl.'s Mem. at 3.) Defendant responds that the ALJ properly consulted the VE pursuant to the SSA regulations. (Def.'s Mem. at 17-20.)

At the fifth step of the sequential analysis, the Commissioner must show that, considering the claimant's age, education, work experience and RFC, the claimant could perform other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(f), 416.920(f). The Commissioner can carry her burden in the final step with the testimony of a VE. 20 C.F.R. §§ 404.1566(e), 416.966(e). During an administrative hearing, the ALJ must pose hypothetical questions to the VE that accurately represent the claimant's RFC, so that the VE can offer testimony about any jobs existing in the national economy that the claimant could perform. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents all of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." *Walker*, 889 F.2d at 50.

Here, the ALJ found that Plaintiff had the RFC to perform "less than the full range of light work," with additional limitations. (R. at 29.) However, due to the errors made by the ALJ involving Plaintiff's RFC, the Court cannot determine whether the ALJ accurately communicated all of Plaintiff's impairments. Accordingly, the Court recommends remand to the SSA for further proceedings.

**C. A remand is the proper mechanism to remedy the defect in the ALJ's decision.**

Plaintiff argues for an award of benefits, rather than a remand, asserting that a significant reduction in Plaintiff's capacity to perform light work requires the Court to award benefits. (Pl.'s Mem. at 4; Tr. at 21-22.) Because the Court cannot determine whether Plaintiff's

17

limitations significantly reduced her exertional capacity, the Court will not recommend an award of benefits.

"If the reviewing court has no way of evaluating the basis of the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Radford*, 734 F.3d at 295 (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)). The ALJ's failure to sufficiently explain his reasoning prevents this Court from undertaking a meaningful review of his decision. And this Court cannot "reweigh conflicting evidence, make credibility determinations, or substitute our judgment" to fill in the gaps left by the ALJ. *Radford*, 734 F.3d at 296 (quoting *Hancock*, 667 F.3d at 472). Therefore, the Court recommends a remand, rather than an award of benefits.

## V. CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 12) be GRANTED, that Defendant's Motion for Summary Judgment (ECF No. 14) be DENIED and that the final decision of the Commissioner be VACATED and REMANDED.

Let the clerk forward a copy of this Report and Recommendation to the Senior United States District Judge James R. Spencer and to all counsel of record.

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.

/s/
David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: February 19, 2016